UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE MONEY SOURCE INC.,

                        Plaintiff,

            -against-                                    18-cv-03523 (SJF)(GRB)

LOANCARE LLC,

                        Defendant.


## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO DISMISS THE AMENDED COMPLAINT


**MOHEN COOPER LLC**
Andrew Cooper
Kenneth S. Kast
135 Crossways Park Drive, Suite 402
Woodbury, NY 11797
(516) 280-8600

*Attorneys for Plaintiff*
*The Money Source Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

    I.    The Parties .................................................................................................................2

    II.   The Agreement..........................................................................................................3

    III.  The Diehl Mortgage .................................................................................................4

    IV.  The Alabama Action .................................................................................................4

    V.   The Paymap Action...................................................................................................6

    VI.  The First Amended Complaint..................................................................................7

ARGUMENT .........................................................................................................................7

    I.    TMS adequately alleges more than $75,000 in damages..........................................8

        A.  TMS's damages claim meets the jurisdictional threshold ....................................8

        B.  TMS's damages claim is fixed and liquidated.....................................................11

    II.   TMS's claims are ripe for adjudication ....................................................................12

    III.  Allegations in the Paymap Action do not preclude this lawsuit ........................................13

    IV.  Rulings in the Alabama Action have no effect on this matter ...........................................14

    V.   The Amended Complaint plausibly alleges all claims..............................................15

        A.  The Agreement does not preclude TMS's claims.................................................15

        B.  The Amended Complaint alleges facts warranting declaratory relief .................17

        C.  LoanCare breached the covenant of good faith and fair dealing .........................20

            i.   LoanCare breached the covenant of good faith and fair dealing ..............20

            ii.  The allegations against LoanCare do not relate to future promises or
                require LoanCare to have acted against its own economic interest ..........21

VI.     TMS should be granted leave to amend, if necessary ........................................................22

**CONCLUSION** ...............................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of N.Y. v. Sasson*
786 F. Supp. 349 (S.D.N.Y. 1992) ............................................................................ 21-22

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)............................................................................................... 7-8

*Caro v. Weintraub*
618 F.3d 94 (2d Cir. 2010)........................................................................................7

*Chase Manhattan Bank N.A. v. Am. Nat'l Bank and Trust Co. of Chi.*
93 F.3d 1064 (2d Cir. 2006)......................................................................................11

*Cortec Industries, Inc. v. Sum Holding L.P.*
949 F.2d 42 (2d Cir. 1991)........................................................................................8

*Dean v. Blumenthal*
577 F.3d 60 (2d Cir. 2009)........................................................................................20

*Dow Jones & Co., Inc. v. Harrods Ltd.*
346 F.3d 357 (2d Cir. 2003)......................................................................................18

*Evans v. Ottimo*
469 F.3d 278 (2d Cir. 2006)......................................................................................14

*Johnson v. Lew*
2015 U.S. Dist. LEXIS 95827 (N.D.N.Y. July 23, 2015)...........................................7

*Luckenbach Steamship Co. v. United States*
312 F.2d 545 (2d Cir. 1963)......................................................................................19

*Makowski v. United Bhd. Of Carpenters & Joiners of Am.*
No. 08 Civ. 6150(PAC), 2010 U.S. Dist. LEXIS 77775 (S.D.N.Y. Aug. 2, 2010).............. 9, fn. 2

*Mckenna v. Peekskill Hous. Auth.*
647 F.2d 332 (2d Cir. 1981)......................................................................................20

*McNutt v. General Motors Corp.*
298 U.S. 178 (1936)............................................................................................ 8-9

*N.Y.  Times Co. v. Gonzales*
459 F.3d 160 (2d Cir. 2006)................................................................................. 17-18

*Schlesinger v. Councilman*
420 U.S. 738 (1975)......................................................................................................11

*Spaulding v. Figeroux*
No. 16-CV-1040, 2016 U.S.  Dist. LEXIS 41475 (E.D.N.Y. Mar. 29, 2016)..............................10

*St. Paul Mercury Indem. Co. v. Red Cab Co.*
303 U.S. 283 (1938).....................................................................................................11

*Stokes v. Village of Wurtsboro*
818 F.2d 4 (2d Cir. 1987).............................................................................................20

*Texas v. United States*
523 U.S. 296 (1998).....................................................................................................12

*Tongkook Am., Inc. v. Shipton Sportswear Co.*
14 F.3d 781 (2d Cir. 1994)...........................................................................................8

*United Food & Commercial Workers Union Local 919 v.*
*CenterMark Props. Meridian Square, Inc.*
30 F.3d 298 (2d Cir. 1994)....................................................................................... 9-10

*US Airways, Inc. v. Sabre Holdings Corp.*
No. 11 Civ 2725 (LGS), 2015 U.S. Dist. LEXIS 118545 (S.D.N.Y. Sept. 4, 2015).............. 18-19

*Weidberg v. Barnett*
752 F. Supp. 2d 301 (E.D.N.Y. 2010) ...........................................................................12

*Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc.*
166 F.3d 59 (2d Cir. 1999)...........................................................................................11

## **Statutes**

28 U.S.C. § 1332(a) ....................................................................................................8

28 U.S.C. §1653................................................................................................................11

28 U.S.C. § 2201(a) ....................................................................................................13

This memorandum is submitted in opposition to the Motion to Dismiss filed by defendant LoanCare, LLC ("defendant" or "LoanCare") pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (the "Motion"), which seeks the dismissal of the First Amended Complaint ("Amended Complaint" or "Amend. Compl. ¶_") [Dkt. No. 9] filed by The Money Source Inc. ("plaintiff" or "TMS"). A copy of the Amended Complaint is annexed as Exhibit 1 to the Declaration of Andrew Cooper in Opposition to LoanCare's Motion to Dismiss ("Cooper Decl.").

## PRELIMINARY STATEMENT

The Motion should be denied in its entirety as the Amended Complaint is more than adequately pled and, consequently, none of the arguments raised by LoanCare warrant dismissal.

The crux of this matter involves TMS's former loan subservicer, LoanCare, who only recently admitted that it had received several loan payments from one of TMS's mortgagees, Anastasia P. Diehl ("Diehl"). LoanCare then failed to remit those payment to TMS as required pursuant to the Parties' subservicer agreement. Instead, LoanCare held these payments for years and neither forwarded them to TMS nor returned them to Diehl. LoanCare either acted willfully or grossly negligent in attempting to conceal its receipt of and continued possession of these payments. Either way, LoanCare's conduct violated the Parties' subservicer agreement.

As a direct result of LoanCare's breach, TMS began collection efforts under the mistaken impression that Diehl had defaulted under the terms of the mortgage agreement. Diehl thereafter filed a lawsuit against TMS, LoanCare, and three credit reporting agencies alleging a variety of causes of action relating to collection efforts.[1] After approximately two years and having

---

[1] Diehl filed a complaint against TMS, LoanCare, Equifax, Inc., TransUnion, LLC, and Experian Information Solutions, Inc. in the United States District Court for the Southern District of Alabama, Case No. 1:17-cv-00125-WS-B (the "Alabama Action"). Equifax, Inc., TransUnion, LLC, and Experian Information Solutions, Inc. are collectively hereafter referred to as the "credit agencies".

1

incurred well over $150,000 in attorneys' fees defending itself and LoanCare in the Alabama

Action, LoanCare sent the missing mortgage payments to TMS.

LoanCare tendered the defense of the Alabama Action to TMS pursuant to the Parties'

agreement, and TMS agreed to defend and indemnify LoanCare based on the mistaken belief that

LoanCare was not responsible for mishandling Diehl's mortgage payments.  It has now become

apparent that Diehl's purported damages in the Alabama Action were a direct result of

LoanCare's breach of the subservicing agreement, which vitiates any obligation that TMS had to

defend LoanCare and, further, places a reciprocal obligation on LoanCare to defend and

indemnify TMS in the Alabama Action.  Consequently, TMS alleges that LoanCare has breached

its agreement with TMS in failing to deliver the Diehl payments and, as a result, must reimburse

TMS for fees and costs incurred in defending LoanCare, as well as TMS, in the Alabama Action.

For the above reasons, as set forth in greater detail below, the Amended Complaint is

well pled and the Motion should be denied in all respects.

## STATEMENT OF FACTS

## I.   THE PARTIES

TMS is a residential mortgage loan originator and, in many cases, also services the loans

it originates for its borrowers.  Cooper Decl., Amend. Compl. at ¶8.  Additionally, TMS also acts

as a loan servicer for loans originated by third-party lenders and/or mortgage holders.  *Id*.  In

those instances, TMS acquires the loan servicing rights for residential mortgage loans that have

been originated and/or held by third parties.  *Id*.

For some residential loans it also services, TMS enters into contracts with loan

subservicers to manage the day-to-day administration of those loans including, but not limited to,

the collection of loan payments on behalf of TMS.  *Id*. at ¶9.  These contracts are referred to as loan subservicing agreements. *Id*.

LoanCare is a subservicer with whom TMS had a loan subservicing agreement.  *Id*.

## II.    THE AGREEMENT

LoanCare and TMS entered into a subservicing agreement dated June 1, 2014 (the "Agreement").  *Id*. at ¶10; a partially redacted copy of the Agreement is annexed as Exhibit A to the Declaration of Marlee Waxelbaum in Support of LoanCare LLC's Motion to Dismiss the First Amended Complaint ("Waxelbaum Decl.").  The Agreement provided that, among other responsibilities, LoanCare was to collect principal, interest, and other loan-related amounts owed from borrowers and provide all other administrative services necessary for the management of those loans on TMS's behalf.  *Id*.; Agreement at p. 9, ¶2.3.  This required LoanCare to remit monies collected from borrowers to TMS.  *See id*.  LoanCare was also required to perform its contractual duties with a degree of care that is no less than that provided by industry sub-servicers generally.  *Id*. at ¶11.

In the event of litigation involving a borrower for whom LoanCare was, at any time, the subservicer for that borrower's loan, LoanCare agreed under the terms of the Agreement to "indemnify, defend, and hold harmless [TMS] from" losses: (a) arising out of LoanCare's "material failure to . . . perform all of its material obligations in compliance with the terms of the Agreement"; or (b) "gross negligence arising solely from [LoanCare's] own acts, or omissions or the willful misconduct of [LoanCare] in performing its obligations" under the Agreement.  *Id*. at ¶13; Agreement at p.33, ¶8.2.  For a party to continue to be entitled to a defense and indemnification, it must reasonably cooperate in the defense of covered claims.  Amend. Compl. at ¶15.

III.     **THE DIEHL MORTGAGE**

On or about April 15, 2014, Diehl, an Alabama resident, obtained a residential purchase money loan from Home Mortgage of America, Inc. (the "Diehl Loan"), which was secured by a mortgage on Diehl's home.  Amend. Compl. at ¶20.  Shortly thereafter, TMS acquired the loan from Home Mortgage of America, Inc.

Pursuant to the parties' Agreement, LoanCare subserviced the Diehl Loan for TMS.  *Id*. at ¶21.  Thereafter, Diehl enrolled in an "Equity Accelerator Program" (the "EAP") with Paymap, Inc. ("Paymap"), under which her monthly mortgage payments were automatically withdrawn from her bank account monthly in two equal but separate payments.  *Id*. at ¶26.  Paymap would then remit those amounts to LoanCare on behalf of Diehl.  *Id*.

When the parties' Agreement was terminated in or about August 2015, LoanCare reassigned its subservicing rights back to TMS, including its subservicing of the Diehl Loan.  *Id*. at ¶¶22-23.  Thereafter, Diehl's payments were supposed to be sent directly to TMS.  *See id*. Notwithstanding this termination, pursuant to the Agreement's survival clause, LoanCare remained obligated to forward any monies received from Diehl to TMS until at least August 2017.  *Id*. at ¶24; Agreement at p. 34, ¶8.5.

IV.     **THE ALABAMA ACTION**

Diehl's January and April 2016 mortgage payments were not submitted to TMS (collectively, the "missing mortgage payments").  *Id*. at ¶¶ 28-32.  Because it was Diehl's obligation to ensure TMS received each mortgage payment and failed, TMS began collection efforts, including by reporting her default to the credit agencies.  Amend. Compl. at ¶¶25, 32, 39-40.

4

Relating to these collection efforts, on March 20, 2017, Diehl filed a complaint against TMS, LoanCare, and the credit agencies in the United States District Court for the Southern District of Alabama (i.e., the Alabama Action). *Id*. at ¶25.  In the Alabama Action, Diehl alleges that the defendants wrongfully sought to collect on her mortgage, and made the following claims: (a) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) against TMS; (b) breach of Diehl's mortgage agreement against TMS and LoanCare; (c) fraud against LoanCare; (d) invasion of privacy against TMS and LoanCare; (e) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681(o) and (n) against the credit report agency defendants; and (f) FCRA violations against TMS.  *Id*. at ¶33.

It was not until January, 2018, during discovery in the Alabama Action, that a representative of LoanCare, Allison Bielby, first revealed that LoanCare had actually received Diehl's January 2016 payment.  Ms. Bielby misrepresented that the January 2016 mortgage payment had been returned to Diehl.  Amend. Compl. at ¶¶ 35-36.  Further, Ms. Bielby also misrepresented that LoanCare did not receive Diehl's April 2016 payment.  *Id*. at ¶¶37-38.

In fact, just 11 days after Ms. Bielby's deposition, TMS's counsel received two checks from LoanCare in the exact amount of each of Diehl's missing mortgage payments.  *Id*. at ¶37.  These checks represent the missing mortgage payments.  *Id*. at ¶¶37-38.  It became apparent that LoanCare was in possession of the missing mortgage payments all the time yet failed to either forward them to TMS or return them to Diehl.  *Id*. at ¶¶39-40.  LoanCare also failed to inform TMS that it had received these payments.  *Id*. at ¶41.  It was these failures that directly resulted in TMS beginning collection efforts causing the damages alleged by Diehl in the Alabama Action.  *Id*.

After over a year of defending the Alabama Action, LoanCare and TMS jointly moved for summary judgment. LoanCare was dismissed with prejudice. Waxelbaum Decl., Exhibit B. TMS paid for LoanCare's litigation expenses in the Alabama Action, which independently cost over $75,000. Amend. Compl. at ¶¶3, 34.

Although several of Diehl's claims against TMS in the Alabama Action were dismissed, TMS remains a defendant because of issues of fact relating to TMS's alleged collection efforts. Waxelbaum Decl., Exhibit B at p. 24. TMS has paid for and continues to pay for all its litigation expenses in the Alabama Action, which has already totaled well over $75,000. Amend. Compl. at ¶¶3, 34. These expenses include, but are not limited to, attorney's fees relating to drafting two responsive pleadings, extensive paper discovery, multiple depositions, a motion to consolidate separate lawsuits, motions for summary judgment, and more. *See, e.g.*, Alabama Action, Dkt. Nos. 27, 34, 84-86, 91, 122-123, 126-127.

The *Diehl* summary judgment opinion decided only whether issues of fact remained between Diehl, on the one hand, and LoanCare and TMS, on the other hand. *See generally*, Waxelbaum Decl., Exhibit B. No decision relating to the rights and responsibilities as between LoanCare and TMS under the Agreement was made at that time. *See id*.

## V.   THE PAYMAP ACTION

On March 30, 2018, after learning during the Alabama Action that Paymap misdirected the missing mortgage payments, TMS, along with LoanCare, initiated a lawsuit against Paymap. Waxelbaum Decl., Exhibit C ("Paymap Action").

In the Paymap Action, TMS alleged damages caused "by Paymap's negligent and wanton failure to properly route Ms. Diehl's monthly payment[s], and in particular, the January 2016 and April 2016 payments at issue in the [Alabama] Action." Paymap Action at ¶4. Among other

instances of malfeasance, Paymap misrouted the missing mortgage payments "to LoanCare rather than to TMS, the servicer of Ms. Diehl's loan…"  *Id*. at ¶¶2, 21, 24.

On July 16, 2018, shortly after its dismissal from the Alabama Action, LoanCare sought and was granted its request to voluntarily dismiss its claims against Paymap.  *See* Paymap Action at Dkt. Nos. 18 and 19.

## VI.    THE FIRST AMENDED COMPLAINT

In this action, based on LoanCare's misconduct and breach of the Agreement by failing to forward and concealing the missing mortgage payments, TMS seeks damages against LoanCare for amounts TMS expended in defending TMS and LoanCare in the Alabama Action, including legal fees and other costs.  Amend. Compl. at ¶¶42-54, 64-72.

TMS also seeks an Order that LoanCare be compelled to defend and indemnify TMS in the Alabama Action moving forward based on the indemnification provision in the Agreement. *Id*. at ¶¶55-63.  Incidentally, the reciprocal contractual language relied on by LoanCare when it tendered the defense of the Alabama Action to TMS.

## ARGUMENT

In reviewing a motion to dismiss, courts accept as true all the complaint's factual allegations and draw inferences in the light most favorable to the plaintiff.  *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).  A complaint need only allege factual allegations enough "to raise a right to relief above the speculative level [to a plausible level]."  *Johnson v. Lew*, 2015 U.S. Dist. LEXIS 95827, at *9 (N.D.N.Y. July 23, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal alterations supplied).  In assessing this question, courts may consider outside information that the plaintiff relied on in filing suit.  *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

7

The Motion argues that the matter must be dismissed because: (I) TMS failed to allege with particularity that $75,000 or more is in controversy; (II) TMS's claims are not ripe; (III) TMS's allegations in the Paymap Action are contradictory to this action; (IV) the Alabama Action summary judgment opinion precludes the instant action; and (V) the Amended Complaint otherwise fails to state a claim.  Each of these arguments rely primarily upon misinterpretations of the Amended Complaint.  Notwithstanding this, to the extent that there is any defect in the Amended Complaint, (VI) same is curable and TMS should be permitted leave to amend.

## I.   TMS ADEQUATELY ALLEGES MORE THAN $75,000 IN DAMAGES

### A.   TMS's Damages Claim Meets the Jurisdictional Threshold

The Motion first claims that plaintiff failed to "satisfy the $75,000 amount in controversy requirement [of 28 U.S.C. § 1332(a)] because Plaintiff's singular allegation that it 'has incurred counsel fees, costs, and other expenses well in excess of $75,000' is entirely conclusory."  *See* Motion at p. 9 (quoting Amend. Compl. at ¶34).

As noted by defendant, to meet the damages threshold for diversity jurisdiction, TMS need only show a "'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  Opposition at pp. 8-9 (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).  When the jurisdictional amount is challenged, "the party alleging jurisdiction must support his allegations by a preponderance of evidence."  *McNutt v. General Motors Corp.*, 298 U.S. 178, 189 (1936).

TMS alleges that it fully defended and indemnified LoanCare for all of TMS's and LoanCare's defense costs in the Alabama Action.  Amend. Compl. at ¶¶3, 34.  These services included attorney's fees relating to drafting two responsive pleadings, extensive paper discovery, multiple depositions, a motion to consolidate separate lawsuits, motions for summary judgment,

and more.  *See, e.g.*, Alabama Action, Dkt. Nos. 27, 34, 84-86, 91, 122-123, 126-127.[2]  TMS's payment of legal fees relating to LoanCare's defense lasted for over a year (Amend. Compl. at ¶¶3, 34) while its own defense costs continue.  Given the length and breadth of work performed, the Amended Complaint's allegation that TMS "incurred counsel fees, costs, and other expenses well in excess of $75,000" raises more than competent proof TMS suffered more than $75,000 in damages.  Amend. Compl. at ¶34.

LoanCare claims that *United Food & Commercial Workers Union Local 919 v. CenterMark Props. Meridian Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) supports its position. Motion at p. 9.  In *United Food*, defendants challenged plaintiff's contention that the federal court had diversity jurisdiction over the matter, in part, because the pleadings were not "sufficient to establish that the amount in controversy exceeds $50,000 for jurisdictional purposes."  *Id*. at 303.  The Second Circuit accepted the defendants' argument because the plaintiff: (1) was only seeking injunctive relief to prevent defendants from enforcing a picketing ban; and (2) only provided a boilerplate phrase for "such other relief at law or in equity as is fair and just."  *Id*. at 305 (emphasis supplied).  However, the complaint alleged no specific damages except that "boilerplate demand statement, as required by Connecticut state court procedure in all actions..."  *Id*.  Further, the plaintiff failed to submit any supplementary evidence to demonstrate

---

[2] The Court may take judicial notice of public filings, including the docket of another lawsuit. *See e.g., Makowski v. United Bhd. Of Carpenters & Joiners of Am.*, No. 08 Civ. 6150(PAC), 2010 U.S. Dist. LEXIS 77775, at *6 n.4 (S.D.N.Y. Aug. 2, 2010) (considering the docket of another matter that contained contradictory allegations).

damages.  *Id*. at 306.  Nevertheless, the Second Circuit remanded the matter to the district court to allow the parties to submit evidence of the amount in controversy.  *Id*.

LoanCare's other purported legal support, *Spaulding v. Figeroux*, No. 16-CV-1040, 2016 U.S.  Dist. LEXIS 41475 (E.D.N.Y. Mar. 29, 2016), involved a prisoner lawsuit in which the plaintiff sued a former attorney for inadequate legal services regarding plaintiff's naturalization application.  *Id*. at *6.  The only specific damages alleged in the complaint was for $750.00, the amount paid to the law firm to appeal an agency decision.  *Id*. at *7.  Otherwise, the only damages claim was conclusory because it, without providing any basis, simply demanded an additional $25 million in punitive and compensatory damages.  *Id*.  The *Spaulding* Court found this to not meet the jurisdictional damages requirement, but permitted the plaintiff to amend the complaint so long as he showed "that there is a 'reasonable probability' that the amount in controversy… is in excess of $75,000."  *Id*. at *8.

Unlike the plaintiffs in *United Food* and *Spaulding*, no further evidence is needed here because TMS provided a factual basis for its damages claim – i.e., defending itself and LoanCare for over a year in a federal lawsuit.  Amend. Compl. at ¶¶3, 34.  Moreover, TMS has submitted supplementary evidence of the great efforts undertaken in the Alabama Action – i.e., pleadings, depositions, motions, etc.  *See, e.g.*, Alabama Action, Dkt. Nos. 27, 34, 84-86, 91, 122-123, 126-127.

Therefore, TMS has satisfied the pleading standard to meet the amount in controversy requirement.

10

### B.  TMS's Damages Claim is Fixed and Liquidated

Recognizing the weakness of the above argument, LoanCare next argues that TMS's damages are "entirely speculative" because they cannot be assessed until the Alabama Action ends.  *See* Motion at pp. 9-10.

When a court considers the question of whether the $75,000 damages threshold is sufficiently pled, the plaintiff is afforded "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).  It is without question that the "sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

As set forth in greater detail above, TMS has asserted over $75,000 in damages against LoanCare which was owed at the filing of this lawsuit.  *See supra* at p. 9.  It provided the basis for damages: TMS, for years, paying the legal fees and related costs for both TMS and LoanCare in the Alabama Action.  *Id.*  There is absolutely no way these allegations are in the same hemisphere as the vagueness required for dismissal.

In sum, dismissal of the Amended Complaint is unwarranted because there is no deficiency in the damage allegations.  To the extent that any deficiency is found, TMS should be granted the right to amend.  *See, e.g., Chase Manhattan Bank N.A. v. Am. Nat'l Bank and Trust Co. of Chi.*, 93 F.3d 1064, 1071 (2d Cir. 2006) ("Because the amended complaint satisfied the amount in controversy requirement…."); *Schlesinger v. Councilman*, 420 U.S. 738, 745 n.9 (1975) ("Defective allegations of jurisdiction may be amended." (citing 28 U.S.C. §1653)).

11

**II.**  **TMS'S CLAIMS ARE RIPE FOR ADJUDICATION**

Defendant argues that plaintiff's claims are not ripe because they "are contingent on the outcome of the [Alabama] Action which is ongoing."  Motion at p. 10.

It is undisputed that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Motion at p. 10 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted)).  To suit this standard, Defendant misinterprets the Amended Complaint to claim that plaintiff's damages relate only to future "events that cannot be predicted with certainty."  Motion at p. 10 (citing *Weidberg v. Barnett*, 752 F. Supp. 2d 301, 310 (E.D.N.Y. 2010)).

As an initial matter, unlike the instant case, *Weidberg* was decided on a motion for summary judgment, after the factual record was fully developed.

Further, *Weidberg* does not support LoanCare's argument.  In *Weidberg*, the issues before the Court centered on a dispute between two former co-owners, Clifford Weidberg and Stewart Barnett, of a company that manufactured high-end bicycles.  *Weidberg*, 752 F. Supp. 2d at 303.  Weidberg asserted a claim against Barnett for fraudulent inducement to contract based on Barnett purposely misstating the value of the company to induce Weidberg to increase his liability on a line of credit.  *Id.* at 309.  However, the credit holder had been fully paid and was not asserting claims against Weidberg.  *Id.* at 310.  Because there was no existing claim relating to the credit line, Weidberg was exposed to no present liability and any future liability depended "on events that [could not] be predicted with certainty."  *Id.*  Consequently, *Weidberg* only stands for the proposition that there can be no damages for an event that has not yet occurred.

Unlike in *Weidberg*, the claims at issue here are not contingent on any future events or facts.  Instead, the claims asserted are based on LoanCare's failure to perform as required under

the Agreement.  Amend. Compl. at ¶¶42-54, 64-72.  More specifically, in breach of the

Agreement, LoanCare concealed and/or negligently handled Diehl's missing mortgage

payments, directly leading to the Alabama Action, and all the damages and costs associated

therewith.  *Id*.  The Amended Complaint will resolve whether, based on LoanCare's past

conduct, LoanCare must pay damages for costs already incurred by TMS in the Alabama Action

(i.e., attorney's fees and costs).

The Amended Complaint's forward-looking declaratory relief (Count Two) seeks the

Court's declaration of rights and relations between TMS and LoanCare under the Agreement

based on past conduct.  *Id*. at ¶¶55-63.  That conduct includes LoanCare's failure to forward no

less than two mortgage payments to TMS in violation of the Agreement and industry standard.

*Id*. at ¶¶35-41.  Based on this breach, TMS is seeking an Order requiring LoanCare to defend and

indemnify TMS for future Alabama Action-related costs.  *Id*. at ¶¶55-63.  This a determination

this Court may make as it concerns the rights and relations of the parties.  *See* 28 U.S.C. §

2201(a) ("any court of the United State, upon the filing of an appropriate pleading, may declare

the rights and other legal relations of any interested party seeking such declaration").

Thus, the Amended Complaint sets forth a live controversy that is ripe for consideration.

## III.     ALLEGATIONS IN THE PAYMAP ACTION DO NOT PRECLUDE THIS LAWSUIT

LoanCare posits that TMS's allegations in the Paymap Action contradict the allegations

in this matter, and so the contradictory allegations in this matter should be disregarded.  Motion

at pp. 10-11.  Defendant claims that TMS's allegations that Paymap "misrouted" the mortgage

payments to LoanCare is contradictory to TMS's allegations here that LoanCare knew it had

erroneously received them.  Motion at p. 11.

The Paymap Action allegations do not contradict the Amended Complaint's allegations. In fact, Paymap and LoanCare are both responsible for TMS's damages.  While it was Paymap who initially misrouted Diehl's mortgage payments to LoanCare, it was LoanCare's failure to forward those monies to TMS or to return them to Diehl that resulted in a breach of the subservicing Agreement, caused danger to TMS and caused the underlying loan to become delinquent.  *Compare* Paymap Action at ¶2 *with* Amend. Compl. at ¶¶42-72.  Ultimately, it was this breach that led TMS to commence collection efforts which led to the Alabama Action.

While Paymap may have liability, that liability does not absolve LoanCare of its own culpability.  At minimum, LoanCare should have informed TMS that it was holding the missing mortgage payments, saving TMS the potential exposure of the Alabama Action and its legal defense.

Therefore, the Amended Complaint is not at odds at all with TMS's allegations in the Paymap Action.

## IV.   RULINGS IN THE ALABAMA ACTION HAVE NO EFFECT ON THIS MATTER

Defendant next argues that collateral estoppel bars this action because TMS's claims here "are virtually identical to those raised in the [Alabama] Action wherein all of Diehl's claims against LoanCare were dismissed with prejudice."  Motion at p. 12.

It is black letter law that New York only applies collateral estoppel when: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

LoanCare swiftly argues that there was a decisive issue determined on summary judgment in the Alabama Action that bars this case pursuant to collateral estoppel.  Motion at pp.

14

12-13.  To be clear; the only issues even addressed on the summary judgment motion and resulting opinion in the Alabama Action relate to the rights and responsibilities between Diehl, on the one hand, and TMS and LoanCare, on the other.  Waxelbaum Decl., Exhibit B.

Here, contrary to any issue raised in the Alabama Action, this lawsuit is about whether LoanCare breached its subservicing Agreement with TMS by its concealment and failure to forward the missing mortgage payments.  Amend Compl. at ¶¶42-72.  As a result, TMS alleges that LoanCare owes damages for amounts TMS already paid in the Alabama Action.  *Id*. at ¶¶3, 34.  TMS further seeks a declaratory judgment about the rights and responsibilities regarding additional costs sustained by TMS in the Alabama Action.  *Id*. at ¶¶55-63.  These issues and these requests for relief were never asserted in the Alabama Action, so there is no preclusive effect in this matter.

Thus, collateral estoppel has no application to the facts in the instant action.


**V.   THE AMENDED COMPLAINT PLAUSIBLY ALLEGES ALL CLAIMS**

Defendant further avers dismissal is appropriate in that the Amended Complaint fails to state a claim because: (A) the Agreement precludes TMS's claims; (B) the allegations do not warrant declaratory relief; and (C) there are no allegations constituting breach of the covenant of good faith and fair dealing.  Motion at pp. 13-22.  A review of the Amended Complaint and documents attached to the Motion demonstrate that these are meritless arguments.

**A.  The Agreement does not Preclude TMS's Claims**

LoanCare claims that it has no obligation under the Agreement to indemnify TMS for borrower-related claims, such as Diehl's claims.  Motion at pp. 14-15.

Notwithstanding LoanCare's convenient position, as pled in the Amended Complaint, LoanCare is required to indemnify TMS for the Alabama Action.  Amend. Compl. at ¶13.

Specifically, the Amended Complaint and Paragraph 8.2 of the Agreement require LoanCare to "indemnify, defend and hold harmless [TMS] from" any damages arising from: "(i) the material failure of [LoanCare] to perform all of its material obligations in compliance with the terms of the Agreement; and [(ii)] gross negligence arising solely from [LoanCare's] own acts or omissions or the willful misconduct of [LoanCare] its obligations hereunder…." *Id.*; Agreement at p. 33, ¶ 8.2.

This indemnification paragraph is applicable here because, pursuant to the Agreement, until LoanCare's obligations under the Agreement terminated in August 2017, it was required to apply monies received by borrowers (e.g., Diehl) to the balance owed. *See, e.g.,* Agreement at p. 9, ¶2.3(b). This is a material obligation for subservicing companies which take over the collection processes for lenders and servicing companies. However, instead of forwarding, returning, or applying Diehl's January and April 2016 payments (i.e., the missing mortgage payments), LoanCare did nothing and, in fact, may have concealed receipt of these payments. Amend. Compl. at ¶¶35-41. This breach directly caused the Alabama Action which is the basis for TMS's damages against LoanCare. Therefore, the Amended Complaint sets forth facts warranting indemnification by LoanCare.

Further, indemnification is also warranted because LoanCare is alleged to have acted willfully and/or with gross negligence in failing to forward Diehl's mortgage payments which directly caused the damages suffered in the Alabama Action. *Id.* at ¶¶42-72. These allegations support an independent basis such that LoanCare must indemnify TMS.

Then, after tacitly acknowledging (as it must) that indemnification is required, LoanCare claims that indemnification is still precluded because of "(a) the summary judgment decision in

the [Alabama] Action which granted summary judgment as to Diehl's claims against LoanCare and (b) TMS's allegations in the Payment Action."  Motion at pp. 14-15.

As already noted *supra* at pp. 14-15, the summary judgment decision in the Alabama Action does not have preclusive effect over any issue raised by TMS in this matter.  But for LoanCare's failure to forward the misrouted payments, TMS would not have engaged in the collection activity it purportedly took and which serves as the plaintiff's basis for damages in the Alabama Action.  *See, e.g.*, Amend. Compl. at ¶¶40, 48.  It was LoanCare's failure to act under the Agreement that caused danger to TMS and caused the underlying loan to become delinquent.  Ultimately, it was LoanCare's failures that led to the fees and costs of the Alabama Action.

Moreover, as already noted *supra* at pp. 13-14, the Paymap Action allegations are not contradictory to TMS's allegations in this case.  LoanCare knowingly (or at least with gross negligence) withheld (or failed to remit) Diehl's mortgage payments which led to TMS's collection efforts and the Alabama Action.  *See, e.g.*, Amend. Compl. at ¶¶40, 48.  Regardless of Paymap's fault in misdirecting Diehl's mortgage payments to LoanCare, LoanCare still was obligated to ensure that they ultimately reached TMS or were returned to Diehl.  *Id*. at ¶¶46-47.  Instead, whether willfully or negligently, LoanCare held onto them for approximately two years.  *Id*. at ¶48.  These allegations are not rebutted by the Paymap Action at all.

Therefore, neither the Agreement nor the Paymap Action preclude this lawsuit.

### B.  The Amended Complaint Alleges Facts Warranting Declaratory Relief

In weighing whether declaratory judgment is warranted, this Circuit considers several factors, including:

     (i)     whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved;

(ii)     whether a judgment would finalize the controversy and offer relief from uncertainty; and

(iii)    whether there is a better or more effective remedy.

*N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (quoting *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003)) (internal quotation marks omitted).  Here, declaratory relief is an appropriate remedy because it would clarify and settle legal issues relating to the parties' corresponding indemnification obligations under the Agreement.

In response, LoanCare first argues that declaratory relief is inappropriate because it purportedly has no duty to indemnify and defend TMS against borrower-related claims even when LoanCare is at fault for such claims.  Motion at pp. 17-18.  Notwithstanding LoanCare's curt argument to the contrary, LoanCare is obligated pursuant to the Agreement to indemnify TMS for losses sustained due to LoanCare's conduct.  *See supra* at pp. 15-16.  Further, LoanCare's position on this issue establishes that declaratory relief is the appropriate remedy.  That is, a determination of whether the agreement requires LoanCare to indemnify and defend TMS, and under what circumstances.

Moreover, as set forth above, the Amended Complaint alleges facts that make LoanCare responsible for the Alabama Action, the damages that may be assessed against TMS therein, and the fees and costs sustained by TMS in defending itself and LoanCare.  Amend. Compl. at ¶¶42-72.  It is based on these facts that TMS seeks an Order clarifying the Parties' rights and responsibilities under the Agreement.

LoanCare claims that *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11 Civ. 2725 (LGS), 2015 U.S. Dist. LEXIS 118545 (S.D.N.Y. Sept. 4, 2015) ("*US Airways*") supports the notion that declaratory relief is unwarranted here.  *Id*.  Nevertheless, in *US Airways*, District Judge Lorna G. Schofield dismissed plaintiff's declaratory judgment claims because US Airways

18

was <u>only</u> seeking relief for "past actions that will not impact the legal relations of the parties." *Id.* at *10. Judge Schofield further pointed out that US Airways had admitted its declaratory relief was "purely retrospective" and solely relating to "past injuries." *Id.*

Here, the declaratory relief sought is for an Order declaring the rights and relations between LoanCare and TMS under the Agreement. Specifically, the Amended Complaint seeks a determination of whether LoanCare has a continuing duty to defend and indemnify TMS in the Alabama Action based on LoanCare's breach of the Agreement. Amend. Compl., Count Two Wherefore Clause at p. 11. As such, unlike the relief sought in *US Airways*, the relief requested here is not purely retrospective. The relief requested is about a current obligation and the continuation of that obligation, given that the Alabama Action continues and so TMS must defend itself. This includes not only the obligation to defend TMS moving forward, but to indemnify TMS for any damage award resulting in the Alabama Action. Amend. Compl. at ¶¶55-63. The fact that the requested determination may also be relevant to LoanCare's obligation to repay TMS for monies it already spent in defending LoanCare in the Alabama Action does not preclude the requested declaratory relief.

Thus, the declaratory relief sought here is not "purely retrospective" – it seeks an Order based on the terms of the Agreement about the rights and relations of the parties today and moving forward – and so the declaratory relief requested must remain.[3] *See Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) (declaratory relief is designed to enable parties to clarify their rights).

To the extent that this Court determines any of Count One's claim for declaratory relief

---

[3] Count One, if the Court desires, may be amended to assert a breach of contract cause of action because the supporting facts easily fit within this claim as well.

as retrospective, which we dispute, there is still a damages claim as part of Count One that must

survive.  Specifically, Count One requests that LoanCare reimburse TMS for "all fees and

expenses incurred by TMS in defending LoanCare and itself in the Alabama Action…."  Amend.

Compl., WHEREFORE CLAUSE at p. 10.  The damages claim portion of Count One relating to

the fees and expenses TMS spent on LoanCare in the Alabama Action is fixed, as LoanCare

admits that it has been terminated from that case.   Motion at p. 4.  These damages claims must

survive the Motion because the damages are fixed and liquidated.  *See e.g., Dean v. Blumenthal*,

577 F.3d 60, 65-66 (2d Cir. 2009) (affirming dismissal of declaratory judgment relief as moot,

but finding damage as not moot); *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 5-6 (2d Cir. 1987)

(affirming dismissal of declaratory judgment as moot, but reversing dismissal of damages

claims); *Mckenna v. Peekskill Hous. Auth.*, 647 F.2d 332, 333 (2d Cir. 1981) (affirming

dismissal of declaratory judgment as moot, but reversing dismissal of damages claims).

### C.  LoanCare Breached the Covenant of Good Faith and Fair Dealing

Defendant last argues that plaintiff's claim for breach of the covenant of good faith and

fair dealing should be dismissed because: (i) there is no current contract between the parties; and

(ii) LoanCare had the right to act in its own interests even if it incidentally lessened TMS's

anticipated benefits/profits.  Motion at pp. 20-21.

### i.  LoanCare breached the covenant of good faith and fair dealing

Defendant claims that, because there is no current contract between TMS and LoanCare,

there can be no claim for the breach of the implied covenant of good faith and fair dealing.

Motion at p. 21.  Specifically, LoanCare alleges that any such claim expired in August 2017.  *Id.*

LoanCare is conflating the issues.  The Agreement, which was in effect through August

2017, required LoanCare to forward Diehl's mortgage payments to TMS.  Amend. Compl. at

20

¶¶10-19.  Since March 20, 2017, Diehl has been suing TMS and LoanCare[4] premised upon these missing payments.  Amend. Compl. at ¶¶25-33.  The Amended Complaint alleges that LoanCare's breach lies in its failure to forward these payments and/or LoanCare's concealment from TMS that it was in possession of these payments for nearly two years.  Amend. Compl. at ¶48.  The Amended Complaint further alleges that LoanCare's misrepresentation about what it did with these missing payments demonstrates LoanCare's bad-faith in attempting cover up their misconduct.  *Id*. at ¶¶68-70.  TMS has sustained significant legal expense and cost[5] because of this bad faith in that LoanCare caused the Alabama Action and then concealed the issue to escape liability for its malfeasance.

Therefore, Count Three must remain.

### ii.   The allegations against LoanCare do not relate to future promises or require LoanCare to have acted against its own economic interest

Defendant argues that the Amended Complaint is based on the premise that LoanCare was required to make future promises beyond the Agreement, and so dismissal is warranted.  Motion at p. 21 (citing *Bank of N.Y. v. Sasson*, 786 F. Supp. 349, 354 (S.D.N.Y. 1992)).

This matter is not about future promises.  It is about whether LoanCare complied with its obligations under the Parties' Agreement.  Specifically, LoanCare agreed and is obligated to indemnify TMS for LoanCare's misconduct under the Agreement up to and through August 2017.  Amend. Compl.  at ¶¶12-16, 24.  TMS contends that the Alabama Action is a result of

---

[4] Again, LoanCare was recently dismissed from the Alabama Action.

[5] The damages continue to accrue, in the form of legal fees and costs and potential liability.  Declaratory relief is only sought as to these continued damages.  Specifically, TMS is seeking a determination of which party is responsible for these fees moving forward based on the Court's interpretation of the past facts and the Agreement.

LoanCare's misconduct that began in January 2016 and continued through August 2017.  *Id*. at ¶¶42-72.

LoanCare finally claims that the Amended Complaint must be dismissed because it was not obligated to act to the benefit of TMS at the cost of its own interests.  Motion at p. 21.  It is difficult to understand what LoanCare means by this argument.  Surely, LoanCare is not suggesting that it would be against their economic interest to have complied with its obligations under the Agreement by forwarding the Diehl payments to TMS as required.

Moreover, this exception only applies as long "the promisee is allowed to reap the benefits of the contract…"  *Bank of N.Y.*, 786 F. Supp. at 354.  The essence of the Agreement was for LoanCare to service and forward mortgagee's payments, including Diehl's payments, to TMS.  Amend. Comp. at ¶¶10-11.  Of course, TMS did not receive Diehl's missing mortgage payments, so it did not receive the benefits of the Agreement.  *Id*. at ¶¶29-32.  Worse yet, TMS also has incurred extensive legal fees and costs in defense of the Alabama Action, for both itself and LoanCare, and still faces potential liability, due to LoanCare failing to fulfill the heart of its obligations under the Agreement.  *Id*. at ¶¶3, 34.  It goes without saying that LoanCare's conduct in concealing the missing mortgage payments robbed TMS of the benefits of the Agreement.

Therefore, Count Three should not be dismissed.

## VI.   TMS SHOULD BE GRANTED LEAVE TO AMEND, IF NECESSARY

To the extent that the Motion is granted in any respect, plaintiff requests that it be permitted to re-plead any dismissed claims to cure perceived deficiencies.

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that the Motion be denied in its entirety, as the Complaint is adequately alleged and none of the arguments raised in the

Motion warrant dismissal.  Plaintiff further requests that the Court grant other and further relief to plaintiff which it deems just and proper, including costs and fees.

Dated: September 25, 2018
       Woodbury, NY 11797

                                     Respectfully submitted,

                                     **MOHEN COOPER LLC**
                                     *Attorneys for Plaintiff*
                                     *The Money Source Inc.*

                          By:   /s/ Andrew Cooper
                                  Andrew Cooper (AC6512)
                                  Kenneth S. Kast (KK9354)
                                  135 Crossways Park Drive, Suite 402
                                  Woodbury, NY 11797
                                  (516) 280-8600
                                  acooper@mohencooper.com
                                  kkast@mohencooper.com

## CERTIFICATE OF SERVICE

Kenneth S. Kast, an attorney duly admitted to practice before this Court, hereby certifies that, on September 25, 2018, the plaintiff's Memorandum of Law in Opposition to defendant's Motion to Dismiss the Amended Complaint, the Declaration of Andrew Cooper, each dated September 25, 2018, and all exhibits submitted in support thereof, which relate to the action captioned, *The Money Source Inc v. LoanCare LLC, 18-cv-03523 (SJF)(GRB)*, were caused to be served by me via regular mail and electronic mail upon the attorneys for defendant designated at the following address:

Marlee Jean Waxelbaum, Esq.
**TROUTMAN SANDERS LLP**
875 3rd Avenue
New York, NY 10022
michael.lacy@troutmansanders.com
marlee.waxelbaum@troutmansanders.com
*Attorneys for Defendant LoanCare, LLC*

Dated:   September 25, 2018
          Woodbury, NY 11797

                    /s/ Kenneth Kast
                    Kenneth S. Kast (KK9354)

24